| Fill in this information to identify the case: |
|---|
| United States Bankruptcy Court for the: |
| _____ District of _____ (State) |
| Case number (*If known*): _____ Chapter \_\_\_\_\_ |

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy   06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

1. **Debtor's name**    _____

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names, and *doing business as* names

   _____
   _____
   _____
   _____
   _____

3. **Debtor's federal Employer Identification Number** (EIN)

   \_\_ \_\_ – \_\_ \_\_ \_\_ \_\_ \_\_ \_\_ \_\_

4. **Debtor's address**

   | **Principal place of business** | **Mailing address, if different from principal place of business** |
   |---|---|
   | _____ Number    Street | _____ Number    Street |
   | _____ | _____ P.O. Box |
   | Eden Prairie _____ City                State   ZIP Code | _____ City            State   ZIP Code |
   |   | **Location of principal assets, if different from principal place of business** |
   | _____ County | _____ Number    Street |
   |   | _____ |
   |   | _____ City            State   ZIP Code |

5. **Debtor's website** (URL)    _____

Debtor _____   Case number *(if known)*_____
       Name

| | | |
|---|---|---|
| 6. | **Type of debtor** | ❏ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) <br> ❏ Partnership (excluding LLP) <br> ❏ Other. Specify: _____ |
| 7. | **Describe debtor's business** | A. *Check one:* <br><br> ❏ Health Care Business (as defined in 11 U.S.C. § 101(27A)) <br> ❏ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B)) <br> ❏ Railroad (as defined in 11 U.S.C. § 101(44)) <br> ❏ Stockbroker (as defined in 11 U.S.C. § 101(53A)) <br> ❏ Commodity Broker (as defined in 11 U.S.C. § 101(6)) <br> ❏ Clearing Bank (as defined in 11 U.S.C. § 781(3)) <br> ❏ None of the above <br><br> B. *Check all that apply:* <br><br> ❏ Tax-exempt entity (as described in 26 U.S.C. § 501) <br> ❏ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3) <br> ❏ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11)) <br><br> C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes . <br><br> ___ ___ ___ ___ |
| 8. | **Under which chapter of the Bankruptcy Code is the debtor filing?** <br><br> A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box. | *Check one:* <br><br> ❏ Chapter 7 <br> ❏ Chapter 9 <br> ❏ Chapter 11. *Check **all** that apply*: <br><br>      ❏ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B). <br><br>      ❏ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B). <br><br>      ❏ A plan is being filed with this petition. <br><br>      ❏ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). <br><br>      ❏ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form. <br><br>      ❏ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2. <br><br> ❏ Chapter 12 |

Debtor _____     Case number (*if known*)_____
         Name

| | | |
|---|---|---|

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☐ No

☐ Yes.   District _____   When _____   Case number _____
                                                                 MM / DD / YYYY

      District _____   When _____   Case number _____
                                                                 MM / DD / YYYY

**10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☐ Yes.   Debtor _____   Relationship _____

      District _____   When _____
                                                            MM / DD / YYYY

      Case number, if known _____

**11.** **Why is the case filed in *this district*?**

Check all that apply:

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12.** **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☐ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

    **Why does the property need immediate attention?**  (*Check all that apply.*)

    ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

       What is the hazard? _____

    ☐ It needs to be physically secured or protected from the weather.

    ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

    ☐ Other _____

    **Where is the property?** _____
                                   Number      Street

    _____
    _____
    City                                      State ZIP Code

    **Is the property insured?**

    ☐ No
    ☐ Yes.  Insurance agency _____

            Contact name _____

            Phone _____

**Statistical and administrative information**

Debtor _____  Case number (*if known*)_____
        Name

| | | |
|---|---|---|
| **13. Debtor's estimation of available funds** | *Check one:*<br>❑ Funds will be available for distribution to unsecured creditors.<br>❑ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. | |

| | | | |
|---|---|---|---|
| **14. Estimated number of creditors** | ❑ 1-49<br>❑ 50-99<br>❑ 100-199<br>❑ 200-999 | ❑ 1,000-5,000<br>❑ 5,001-10,000<br>❑ 10,001-25,000 | ❑ 25,001-50,000<br>❑ 50,001-100,000<br>❑ More than 100,000 |
| **15. Estimated assets** | ❑ $0-$50,000<br>❑ $50,001-$100,000<br>❑ $100,001-$500,000<br>❑ $500,001-$1 million | ❑ $1,000,001-$10 million<br>❑ $10,000,001-$50 million<br>❑ $50,000,001-$100 million<br>❑ $100,000,001-$500 million | ❑ $500,000,001-$1 billion<br>❑ $1,000,000,001-$10 billion<br>❑ $10,000,000,001-$50 billion<br>❑ More than $50 billion |
| **16. Estimated liabilities** | ❑ $0-$50,000<br>❑ $50,001-$100,000<br>❑ $100,001-$500,000<br>❑ $500,001-$1 million | ❑ $1,000,001-$10 million<br>❑ $10,000,001-$50 million<br>❑ $50,000,001-$100 million<br>❑ $100,000,001-$500 million | ❑ $500,000,001-$1 billion<br>❑ $1,000,000,001-$10 billion<br>❑ $10,000,000,001-$50 billion<br>❑ More than $50 billion |

### Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  _____
             MM  / DD  / YYYY

✗ _____  _____
   Signature of authorized representative of debtor    Printed name

Title _____

Debtor _____  Case number (*if known*)_____
         Name

18. **Signature of attorney**

✖ _____  Date  _____
    Signature of attorney for debtor                                  MM   / DD  / YYYY

_____
Printed name

_____
Firm name

_____
Number     Street

_____  _____  _____
City                                                           State      ZIP Code

_____  _____
Contact phone                                       Email address

_____  _____
Bar number                                               State

# SCHEDULE I

## Affiliated Entities

On the date hereof, each of the affiliated entities listed below (including the debtor in this chapter 11 case, collectively, the "Debtors") filed in this Court petitions for relief in the United States Bankruptcy Court for the Southern District of Texas Houston Division (this "Court") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. Contemporaneously with the filings of these petitions, the Debtors filed a motion requesting joint administration of their chapter 11 cases.

Anagram Holdings, LLC
Anagram International, Inc.
Anagram International Holdings, Inc.

On January 17, 2023, each of the affiliated entities listed below (collectively, "Party City") filed in this Court petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., which were jointly administered under Case No. 23-90005. See *In re Party City Holdco Inc., et. al.*, Case No. 23-90005 (MI) (Bankr. S.D. Tex). Party City emerged from its chapter 11 cases in this Court on October 12, 2023. For the avoidance of doubt, the Debtors in these chapter 11 cases consist only of the entities listed above and do not request joint administration with the Party City entities listed below.

Party City Holdco Inc.
Amscan Custom Injection Molding, LLC
Amscan Inc.
Amscan Purple Sage, LLC
Am-Source, LLC
Anagram Eden Prairie Property Holdings LLC
Party City Corporation
Party City Holdings Inc.
Party Horizon Inc.
PC Intermediate Holdings, Inc.
PC Nextco Finance, Inc.
PC Nextco Holdings, LLC
Print Appeal, Inc.
Trisar, Inc.

# BOARD RESOLUTIONS OF
# ANAGRAM HOLDINGS, LLC

November 7, 2023

The following resolutions are presented for approval by the restructuring committee of the board of managers (the "Governing Body") of Anagram Holdings, LLC (the "Company") pursuant to the authority delegated to the Governing Body by the resolutions adopted by the Company on December 6, 2022 (the "December 6 Resolutions"):

**WHEREAS**, pursuant to the December 6 Resolutions, the Company appointed Mr. William L. Transier as the sole, independent manager of the Company (the "Independent Manager") and delegated to the Independent Manager the full power and authority to consider, negotiate, approve, authorize and act upon any "Alleged Conflict Matters" or "Significant Transaction" (each as defined in the December 6 Resolutions);

**WHEREAS**, the Governing Body has determined that each of the matters the Governing Body is approving herein constitute Alleged Conflict Matters or Significant Transactions;

**WHEREAS,** the Governing Body has reviewed and considered the Company's capital structure, liabilities, liquidity needs, assets and operations, and strategic alternatives, in consultation with the chief restructuring officer of the Company (the "Chief Restructuring Officer") and the Company's management, investment bankers and legal and financial advisors;

**WHEREAS**, the Governing Body has had the opportunity to review, consider and ask questions regarding the findings, recommendations and materials presented by the Chief Restructuring Officer and the management, investment bankers and legal and financial advisors of the Company regarding the capital structure, assets and operations, liabilities and liquidity of the Company, the strategic alternatives available to it, and the impact of the foregoing on the Company's business;

**WHEREAS**, the Governing Body, in considering all alternatives, has determined and agrees that it is in the best interest of the Company, its creditors and its other stakeholders to (i) file a petition to commence a proceeding (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) conduct the Sales and Marketing Process (as defined below) during the Chapter 11 Case for all or substantially all of its assets and, in furtherance thereof, execute, deliver and perform under the Stalking Horse APA and the applicable Sale Ancillary Documents (each as defined below) to which the Company is a party, (iii) execute, deliver and perform under the DIP Indenture, the DIP Notes Purchase Agreement, the DIP ABL Agreement and the Additional DIP Documents (each as defined below) to (x) repay the Company's prepetition ABL facility pursuant to a gradual roll-up into the DIP ABL Agreement, (y) fund general corporate needs, including working capital of the Company and (z) pay costs fees, and expenses incurred to administer or related to the Chapter 11 Case and the Sales and Marketing Process, including fees and expenses of professionals, (iv) grant certain adequate protection to the Prepetition Secured Creditors in connection with the use of Cash Collateral (each as defined below) and (v) retain certain advisors in connection with the foregoing; and

**WHEREAS**, in furtherance of the foregoing, the Governing Body desires to approve the following resolutions:

I.  **Commencement of the Chapter 11 Case**

**NOW, THEREFORE, BE IT RESOLVED**, that the Governing Body, in considering all alternatives, has determined and agrees that it is in the best interest of the Company, its creditors and its other stakeholders to file a petition seeking relief under the provisions of the Bankruptcy Code; and be it further

**RESOLVED**, that any manager, officer or director of the Company, including the Chief Restructuring Officer (each, an "Authorized Person"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed to execute and file in the name and on behalf of the Company all petitions, schedules, statements, motions, lists, applications, pleadings, and other documents (the "Chapter 11 Filings") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") (with such changes therein and additions thereto as any such Authorized Person may deem required, necessary, appropriate, desirable or advisable, the execution and delivery of any of the Chapter 11 Filings by any such Authorized Person with any changes thereto to be conclusive evidence that such Authorized Person deemed such changes to meet such standard); and be it further

**RESOLVED,** that each Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to take and perform any and all further acts and deeds that such Authorized Person deems required, necessary, appropriate, desirable or advisable in connection with the Chapter 11 Case or the Chapter 11 Filings, including (i) to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers, and other professionals, (ii) the payment of fees, expenses, and taxes such Authorized Person deems required, necessary, appropriate, desirable or advisable, (iii) negotiating, executing, delivering, performing, and filing any and all additional documents, schedules, statements, motions, pleadings, applications, lists, papers, agreements, certificates, and/or instruments (or any amendments or modifications thereto) in connection with, or in furtherance of, the Chapter 11 Case with a view to the successful prosecution of such Chapter 11 Case (such acts to be conclusive evidence that any such Authorized Person deemed the same to meet such standard); and be it further

II. **Sales and Marketing Process and Stalking Horse APA**

**RESOLVED**, that the Governing Body, in considering all alternatives, has determined and agrees that it is in the best interest of the Company, its creditors and its other stakeholders that, in connection with the Chapter 11 Case, each of the Authorized Persons, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, for and on behalf of the Company, to (i) organize and manage a marketing and sales process for all or substantially all of the Company's assets, whether pursuant to section 363 of the Bankruptcy Code or pursuant to a plan of reorganization or liquidation or otherwise (the "Sales"), (ii) enter into negotiations with any interested parties regarding the Sales, (iii) file one or more motions or other pleadings with the Bankruptcy Court in furtherance of the Sales, including motions or pleadings for bidding

2

or other sale procedures to be used to facilitate any Sales and for authority to enter into the Stalking Horse APA (as defined below) and to pay the bid protections identified therein, (iv) execute and deliver an agreement providing for any Sale, including that certain Asset Purchase Agreement to be entered into by and among the Company, Anagram International, Inc. and Anagram International Holdings, Inc., collectively, as sellers, and Celebration Bidco, LLC, as purchaser (the "Stalking Horse APA"), a copy of which has been presented to the Governing Body, and any exhibits thereto or ancillary documents related thereto or contemplated thereby to which the Company is a party and such additional agreements, consents, certificates, amendments, waivers, supplements and instruments as may be required, necessary, appropriate, desirable or advisable to obtain approval for or consummation of a Sale or the Stalking Horse APA, including any other asset purchase agreement for a competing bidder that is deemed the "successful bidder" in the Sales (the "Sale Ancillary Documents"), and (v) seek approval from the Bankruptcy Court for authority under the Bankruptcy Code and any other relevant or applicable federal, state, local, or non-U.S. law to sell such assets in a Sale or take actions in furtherance of a Sale ((i) through (v), collectively, the "Sales and Marketing Process"); and be it further

**RESOLVED**, that the execution and delivery by the Company of the Stalking Horse APA in substantially the form presented to the Governing Body and the Sale Ancillary Documents (and subject to such modifications as deemed advisable by the Authorized Person), consummation of the transactions contemplated by the Stalking Horse APA and the Sale Ancillary Documents and performance by the Company of its obligations thereunder, are desirable and in the best interest of the Company, its creditors and its other stakeholders, subject to the Governing Body's right in furtherance of its fiduciary duties to consider other bids or alternative transactions; and be it further

**RESOLVED**, that, each of the Authorized Persons (as defined below), acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, for and on behalf of the Company, to execute and deliver the Stalking Horse APA and each Sale Ancillary Document to which the Company is a party, with such changes therein and additions thereto as the Authorized Person executing the same shall deem required, necessary, appropriate, desirable or advisable, with the execution and delivery of the Stalking Horse APA and such Sale Ancillary Documents being conclusive evidence that such Authorized Person deemed the same to be required, necessary, appropriate, desirable or advisable; and be it further

III.  **Approval of DIP Indenture, DIP Notes Purchase Agreement, DIP ABL Agreement and Additional DIP Documents**

**RESOLVED**, that the Governing Body, in considering all alternatives, in connection with the Chapter 11 Case, deems (i) that certain Indenture in substantially the form presented to the Governing Body (and subject to such modifications as deemed advisable by the Authorized Person, the "DIP Indenture"), by and among the Company, as co-issuer, Anagram International, Inc., as co-issuer (collectively, the "DIP Issuers"), Anagram International Holdings, Inc., as guarantor (the "DIP Guarantor"), and GLAS Trust Company LLC, as trustee and collateral agent (in such capacities, the "DIP Trustee"), (ii) that certain Senior Secured Superpriority Debtor-in-Possession Note Purchase Agreement in substantially the form presented to the Governing Body (and subject to such modifications as deemed advisable by the Authorized Person, the "DIP Notes Purchase Agreement") by and among the DIP Issuers, the DIP Guarantor, and the financial

3

institutions and other entities party thereto from time to time as purchasers (the "DIP Noteholders"), (iii) that certain DIP ABL Credit Agreement in substantially the form of that certain Credit Agreement, dated as of May 7, 2021, among Wells Fargo Bank, National Association, as administrative agent, the Company, as co-borrower, Anagram International, Inc., as co-borrower, and the lenders party thereto from time to time, as amended by the DIP Order (as defined below) (and subject to such modifications as deemed advisable by the Authorized Person, the "DIP ABL Agreement"), (iv) all other agreements or documents to which the Company is a party that are required, necessary, appropriate, desirable or advisable to consummate the transactions contemplated by the DIP Indenture, the DIP Notes Purchase Agreement, the DIP Order, and/or the DIP ABL Agreement, and all certificates, notices, and other documents and agreements constituting exhibits to or required by the DIP Indenture, the DIP Notes Purchase Agreement, any DIP Order, and/or the DIP ABL Agreement (each an "Additional DIP Document" and collectively, the "Additional DIP Documents"), and (v) the execution and delivery of, the performance by the Company of its obligations under and the transactions contemplated by the DIP Indenture, the DIP Notes Purchase Agreement, the DIP ABL Agreement and the Additional DIP Documents, including the repayment of the Company's prepetition ABL Facility pursuant to a gradual "roll-up" into the DIP ABL Agreement, in each case, to be in the best interests of the Company, its creditors and its other stakeholders; and be it further

**RESOLVED**, that the terms and provisions of and the execution and delivery of the DIP Notes Purchase Agreement, DIP Indenture, the DIP ABL Agreement and the Additional DIP Documents to which the Company is party by the Company and the consummation by the Company of the transactions contemplated thereunder are hereby authorized and approved in all respects, including (i) the grant of a security interest in and liens upon all assets of the Company in favor of the secured parties under the DIP Indenture and the DIP ABL Agreement (including the authorization of financing statements in connection with liens), (ii) the terms and provisions of and the execution, delivery and performance of all other agreements, security, guarantee or collateral documents, intercreditor agreements, reaffirmation agreements, promissory notes, instruments, mortgages, account control agreements, documents, notices, certificates and/or all other documents related to or constituting exhibits to the DIP Indenture, the DIP Notes Purchase Agreement or the DIP ABL Agreement or that may be required, necessary, appropriate, desirable or advisable to be executed or delivered pursuant to the DIP Indenture, the DIP Notes Purchase Agreement, or the DIP ABL Agreement, including (a) any security and collateral agreements, (b) any guarantees, and (c) all other agreements or documents to which the Company is a party that are required, necessary, appropriate, desirable or advisable to consummate the transactions contemplated by the DIP Indenture, the DIP Notes Purchase Agreement, the DIP ABL Agreement, any DIP Order or Additional DIP Document, and (iii) the making of the representations and warranties and compliance with the covenants under the DIP Indenture, the DIP Notes Purchase Agreement, the DIP ABL Agreement, the Additional DIP Documents and the assumption of any obligations under and in respect of any of the foregoing; and be it further

**RESOLVED**, that any Authorized Person of the Company, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, for and on behalf of the Company, to execute and deliver the DIP Indenture, DIP Notes Purchase Agreement, the DIP ABL Agreement and any Additional DIP Document to which the Company is a party, with such changes therein and additions thereto as any such Authorized Person, in its sole discretion, may deem required, necessary, appropriate, desirable or advisable, the execution and delivery of the DIP

Indenture, the DIP Notes Purchase Agreement, the DIP ABL Agreement and such Additional DIP Document with any changes thereto by the relevant Authorized Person, shall be conclusive evidence that such Authorized Person deemed such changes to meet such standard; and be it further

**RESOLVED**, that each Authorized Person of the Company, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, for and on behalf of the Company, to take all actions (including (i) the negotiation, execution, delivery and filing of any agreement, certificate, instrument or document (including any mortgage, financing statement and/or similar document), (ii) the modification, amendment or waiver of, or consent to, any of the terms and conditions of the DIP Indenture, the DIP Notes Purchase Agreement, the DIP ABL Agreement and/or any Additional DIP Document to which the Company is a party, (iii) the payment of any consideration, and (iv) the payment of indemnitees, fees, costs, expenses, taxes and other amounts incurred by the Company) as any such Authorized Person, in his or her sole discretion, may deem required, necessary, appropriate, desirable or advisable (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard) in order to effect the transactions contemplated under the DIP Indenture, DIP Notes Purchase Agreement, the DIP ABL Agreement or any Additional DIP Document to which the Company is a party or any DIP Order, and all acts of any such Authorized Person taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified and confirmed in all respects; and be it further

**RESOLVED**, that each Authorized Person of the Company, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, for and on behalf of the Company, to prepare any amendment, waiver and/or consent under the DIP Indenture, the DIP Notes Purchase Agreement, the DIP ABL Agreement and/or any Additional DIP Document to which the Company is a party as may be required, necessary, appropriate, desirable or advisable at any time or from time to time, which amendment, waiver and/or consent may provide for modification or relief under the DIP Indenture, the DIP Notes Purchase Agreement, the DIP ABL Agreement and/or any Additional DIP Document to which the Company is a party and may require consent payments, fees or other amounts payable in connection therewith, and that each Authorized Person of the Company be, and hereby is, authorized, in the name and on behalf of the Company, to execute and deliver such amendments, waivers or consents under the DIP Indenture, the DIP Notes Purchase Agreement, the DIP ABL Agreement and/or any Additional DIP Document to which the Company is a party as such Authorized Person shall deem to be required, necessary, appropriate, desirable or advisable, such execution and delivery by such Authorized Person to constitute conclusive evidence of his or her determination and approval of the necessity, appropriateness or advisability thereof; and be it further

**RESOLVED**, that any person dealing with any Authorized Person of the Company in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such officer and by his or her execution of any document or agreement, the same shall be valid and binding obligations of the Company enforceable in accordance with their terms; and be it further

IV.     **Cash Collateral and Adequate Protection**

**RESOLVED**, that the Governing Body, in considering all alternatives, in

connection with the Chapter 11 Case, deems it in the best of interest of the Company, its creditors and its other stakeholders to obtain the benefits from the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which is security for certain prepetition secured creditors of the Company (collectively, the "Prepetition Secured Creditors"); and be it further

**RESOLVED**, that, to use and obtain the benefits of the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, the Company will provide certain adequate protection to the Prepetition Secured Creditors (the "Adequate Protection Obligations"), as documented in one or more orders of the Bankruptcy Court which authorizes, among other matters, the Company to execute and perform under the DIP Indenture, the DIP Notes Purchase Agreement and the DIP ABL Agreement, use Cash Collateral and provide adequate protection to the Prepetition Secured Creditors (the "DIP Order") with such changes, additions, and modifications thereto as an Authorized Person shall approve; and be it further

**RESOLVED**, that the Company be, and hereby is, authorized to negotiate and incur the Adequate Protection Obligations and to undertake any and all related transactions on substantially the same terms as contemplated under any DIP Order; and be it further

**RESOLVED**, that each Authorized Person of the Company, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, for and on behalf of the Company, to cause the Company to negotiate and approve the terms, provisions of, and performance of, and to prepare and deliver the DIP Order; and be it further

**RESOLVED**, that each Authorized Person of the Company, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, for and on behalf of the Company, to take all such further actions, including to pay all fees and expenses, in accordance with the terms of the DIP Order and any documents in relation thereto (the "Cash Collateral Documents"), which shall, in such Authorized Person's sole judgment, be necessary, proper, or advisable to perform such Company's obligations under or in connection with the Cash Collateral Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and be it further

**RESOLVED**, that each Authorized Person of the Company, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, for and on behalf of the Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Cash Collateral Documents, which shall, in such Authorized Person's sole judgment, be necessary, proper, or advisable; and be it further

**V.    Retention of Advisors**

**RESOLVED**, that the Company is hereby authorized to retain the firm of Ankura Consulting Group, LLC, located at 485 Lexington Avenue, 10th Floor, New York, NY, United States 10017, as financial and restructuring advisor for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the Company is hereby authorized to retain the law firm of Simpson Thacher & Bartlett LLP, located at 425 Lexington Avenue, New York, NY 10017, as attorneys for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the Company is hereby authorized to retain the firm of Robert W. Baird & Co., located at 1155 Avenue of the Americas, New York, NY 10036, as investment banker for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the Company is hereby authorized to retain the firm of Kurtzman Carson Consultants LLC, located at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245, as claims, noticing and solicitation agent for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the Company is hereby authorized to retain the firm of Howley Law PLLC, located at 711 Louisiana St, Houston, TX 77002, as local counsel for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the Company is hereby authorized to employ any other professionals as the Governing Body or any Authorized Person hereafter determine may be necessary, proper, or advisable to assist the Company in carrying out its duties under the Bankruptcy Code or in the Chapter 11 Case, and all related matters and to take any and all actions to advance the Company's rights and obligations in connection therewith**;**

**RESOLVED**, that the Company is hereby authorized to negotiate, execute, deliver, file and perform any agreement, document or certificate and to take and perform any and all further acts and deeds (including (i) the payment of any consideration and (ii) the payment of fees, expenses and taxes) that any Authorized Person deems required, necessary, appropriate, desirable or advisable in connection with the Company's Chapter 11 Case, including negotiating, executing, delivering and performing any and all documents, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with the engagement of professionals contemplated by these resolutions, with a view to the successful prosecution of the Chapter 11 Case; and be it further

## VI.   General Authorization and Ratification

**RESOLVED**, that any and all past actions heretofore taken by any Authorized Person, manager, officer, or director of the Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects; and be it further

**RESOLVED**, that the Authorized Persons, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, for and on behalf of the Company, to take or cause to be taken all such further actions, including, but not limited to, (i) the negotiation of such additional agreements, joinders, amendments, supplements, consents, waivers, reports, documents, instruments, applications, notes, court pleadings or certificates currently unknown but which may be required, (ii) the negotiation of such changes and additions to any agreements, amendments, supplements, consents, waivers, reports, documents, instruments, applications, notes court pleadings or certificates currently existing or currently unknown but which may be required, (iii)

7

the execution, delivery, filing (if applicable) and performance of any of the foregoing, and (iv) the payment of all fees, consent payments, taxes, indemnitees and other expenses as such Authorized Person, in his or her sole discretion, may approve or deem required, necessary, appropriate, desirable or advisable in order to carry out the intent and accomplish the purposes of the foregoing resolutions, and the transactions contemplated thereby, all of such actions, executions, deliveries, filings, and payments to be conclusive evidence of such approval or that such Authorized Person deemed the same to be so required, necessary, appropriate, desirable or advisable; and that all such actions, executions, deliveries, filings and payments taken or made at any time in connection with the transactions contemplated by the foregoing resolutions are hereby approved, adopted, ratified and confirmed in all respects as the acts and deeds of the Company as if specifically set out in these resolutions; and be it further

**RESOLVED**, that each Authorized Person of the Company is hereby authorized to certify and deliver to any person to whom such certification and delivery may be deemed required, necessary, appropriate, desirable or advisable in the opinion of such Authorized Person, a true copy of the foregoing resolutions of the Company; and be it further

**RESOLVED**, that any person dealing with any Authorized Person or persons designated and authorized to act by any such Authorized Person in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorized Person or persons designated and authorized to act by such Authorized Person and by his or her execution of any document, agreement or instrument, the same to be a valid and binding obligation of the Company enforceable in accordance with its terms; and be it further

**RESOLVED**, that any actions taken by any Authorized Person, for or on behalf of the Company, prior to the date hereof that would have been authorized by these resolutions but for the fact that such actions were taken prior to the date hereof be, and they hereby are, authorized, adopted, approved, confirmed and ratified in all respects as the actions and deeds of the Company.

**Fill in this information to identify the case:**

Debtor name: Anagram Holdings, LLC et. al.

United States Bankruptcy Court for the Southern District of Texas

Case number (If known):

☐ Check if this is an amended filing

## Official Form 204

**Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders**

12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | TSG SERVER & STORAGE, INC<br>MIKE DUBOIS<br>855 VILLAGE CENTER DRIVE #344<br>ST PAUL, MN 55127-3016 | MIKE DUBOIS<br>PHONE: 612-462-4879<br>EMAIL: MDUBOIS@TSG-USA.COM | TRADE PAYABLES | | | | $ 1,083,273.56 |
| 2 | FORMERRA, LLC / AVIENT CORPORATION<br>SCOTT SODERSTROM<br>1250 WINDHAM PARKWAY<br>ROMEOVILLE, IL 60446 | SCOTT SODERSTROM<br>PHONE: 651-303-7654<br>EMAIL: SCOTT.SODERSTROM@FORMERRA.COM | TRADE PAYABLES | | | | $ 679,611.60 |
| 3 | PARTY FASHION CO., LTD<br>FIONA WANG<br>SUITE 3B, 3/F, MAN MAN COMMERCIAL BUILDING<br>43A-45 JARDINE'S BAZAAR<br>CAUSEWAY BAY, HONG KONG<br>CHINA | FIONA WANG<br>PHONE: 852 3655 9233<br>EMAIL: FIONA@HSBALLOON.COM | TRADE PAYABLES | | | | $ 652,039.60 |
| 4 | CONVERTIDORA INDUSTRIAL<br>GILBERTO RODRIGUEZ<br>RIO DE LA LOZA 2073 COL. ATLAS<br>GUADALAJARA, JALISCO 44870<br>MEXICO | GILBERTO RODRIGUEZ<br>PHONE: 52 33 3668 6920<br>EMAIL: GILBERTOR@CONVER.COM.MX | TRADE PAYABLES | | | | $ 621,034.20 |
| 5 | VISCOFAN USA INC<br>CYNDI CHRISTEL<br>50 COUNTY COURT<br>MONTGOMERY, AL 36105 | CYNDI CHRISTEL<br>PHONE: 217-516-2181<br>EMAIL: CHRISTELC@VISCOFAN.COM | TRADE PAYABLES | | | | $ 618,643.79 |
| 6 | MINNCOR INDUSTRIES<br>JEFF LONSKY<br>2420 LONG LAKE ROAD<br>ROSEVILLE, MN 55113 | JEFF LONSKY<br>PHONE: 651-361-7507<br>EMAIL: JEFF.LONSKY@STATE.MN.US | TRADE PAYABLES | | | | $ 585,889.28 |
| 7 | SIEGWERK USA INC<br>COREY SCHOENHERR<br>3535 SOUTHWEST 56TH STREET<br>DES MOINES, IA 50321 | COREY SCHOENHERR<br>PHONE: 630-401-5683<br>EMAIL: COREY.SCHOENHERR@SIEGWERK.COM | TRADE PAYABLES | | | | $ 543,036.38 |
| 8 | ADVANSIX, INC<br>DOUG DUPONT<br>300 KIMBALL DRIVE, SUITE 101<br>PARSIPPANY, NJ 07054 | DOUG DUPONT<br>PHONE: 973-722-6409<br>EMAIL: DOUG.DUPONT@ADVANSIX.COM | TRADE PAYABLES | | | | $ 364,215.55 |
| 9 | DEACRO INDUSTRIES<br>JOHN ESTEFAN<br>8031 DIXIE RD<br>BRAMPTON, ON L6T 3V1<br>CANADA | JOHN ESTEFAN<br>PHONE: 647-921-3146<br>EMAIL: JESTEFAN@DEACRO.COM | TRADE PAYABLES | | | | $ 346,443.00 |
| 10 | TORAY PLASTICS (AMERICA), INC.<br>JUSTIN LARSON, MIKE MULROY<br>50 BELVER AVENUE<br>NORTH KINGSTOWN, RI 02852 | JUSTIN LARSON, MIKE MULROY<br>PHONE: 401-207-8583 (MIKE)<br>EMAIL: JUSTIN.LARSON.R7@MAIL.TORAY,<br>MICHAEL.MULROY.U2@MAIL.TORAY | TRADE PAYABLES | | | | $ 323,049.04 |
| 11 | TAYLOR PRINT IMPRESSIONS<br>TOM PIETRZAK, DIANE NAPIER<br>1725 ROE CREST DRIVE<br>NORTH MANKATO, MN 56003 | TOM PIETRZAK, DIANE NAPIER<br>PHONE: 651-582-3822 (DIANE)<br>EMAIL: TOM.PIETRZAK@TAYLOR.COM,<br>DIANE.NAPIER@TAYLOR.COM | TRADE PAYABLES | | | | $ 294,177.72 |
| 12 | MIDWEST RUBBER SERVICE<br>BRAD SORENSEN<br>14307 28TH PLACE NORTH<br>MINNEAPOLIS, MN 55447 | BRAD SORENSEN<br>PHONE: 763-286-6688<br>EMAIL: BSORENSEN@MIDWESTRUBBER.COM | TRADE PAYABLES | | | | $ 201,390.64 |
| 13 | CLEARBAGS<br>DAVE PAVAO<br>C/O CLEAR IMAGE INC<br>205 HENCO DRIVE, STE A<br>SELMER, TN 38375 | DAVE PAVAO<br>PHONE: 800-233-2630<br>EMAIL: DAVEP@CLEARBAGS.COM | TRADE PAYABLES | | | | $ 185,515.78 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 14 | LIBERTY PACKAGING<br>RICH WETSCH<br>5600 NORTH HIGHWAY 169<br>MINNEAPOLIS, MN 55428 | RICH WETSCH<br>PHONE: 763-540-9619<br>EMAIL: RICHWETSCH@LIBERTYPACKAGINGINC.COM | TRADE PAYABLES | | | | $ 175,307.56 |
| 15 | SOJITZ PLASTICS AMERICA INC<br>BRIAN LATONZEA<br>231525 MOMENTUM PLACE<br>CHICAGO, IL 60689-5311 | BRIAN LATONZEA<br>PHONE: 920-540-2888<br>EMAIL: BLATONZEA@SOJITZ-PLASTICS.COM | TRADE PAYABLES | | | | $ 157,238.92 |
| 16 | CUSTOM SOLUTIONS MANUFACTURING, INC<br>JUSTIN BOORTZ<br>14022 LINCOLN ST NE<br>HAM LAKE, MN 55304 | JUSTIN BOORTZ<br>PHONE: 763-421-6666<br>EMAIL: JBOORTZ@CUSTOMSOLUTIONSMFG.COM | TRADE PAYABLES | | | | $ 153,923.00 |
| 17 | MICA CORPORATION<br>MARIANNE VASS<br>9 MOUNTAIN VIEW DRIVE<br>SHELTON, CT 06484 | MARIANNE VASS<br>PHONE: 203-466-9719<br>EMAIL: MVASS@MICA-CORP.COM | TRADE PAYABLES | | | | $ 143,437.50 |
| 18 | DAH LOONG DEVELOPMENT CO. LTD<br>SUSAN LIN<br>13F-1, NO. 206, NANKING E RD., SEC 2<br>TAIPEI,<br>TAIWAN, R.O.C. | SUSAN LIN<br>PHONE: +886-2-8770-7155 EXT. 205<br>EMAIL: SUSAN@DAHLOONG.COM.TW | TRADE PAYABLES | | | | $ 99,831.33 |
| 19 | SOUTHERN GRAPHICS SYSTEMS<br>BOB SCHEETZ, JOSHUA LEXVOLD<br>24453 NETWORK PLACE<br>CHICAGO, IL 60673-1244 | BOB SCHEETZ, JOSHUA LEXVOLD<br>PHONE: 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 (JOSHUA)<br>EMAIL: BOB.SCHEETZ@SGSCO.COM, JASHUA.LEXVOLD@SGSCO.COM | TRADE PAYABLES | | | | $ 98,996.15 |
| 20 | CHARTER NEXT GENERATION INC<br>JAMES ROSENBERGER<br>300 N LASALLE DR, SUITE 1575<br>CHICAGO, IL 60654 | JAMES ROSENBERGER<br>PHONE: 262-490-8137<br>EMAIL: JAMES.ROSENBERGER@CNGINC.COM | TRADE PAYABLES | | | | $ 86,630.90 |
| 21 | AMERICAN EXPRESS<br>200 VESEY STREET<br>NEW YORK, NY 10285 | PHONE: 800-528-2122 | TRADE PAYABLES | | | | $ 84,974.63 |
| 22 | SPECTRATEK TECHNOLOGIES INC<br>MARTY KELEM<br>9834 JORDAN CIRCLE<br>SANTA SPRINGS, CA 90670 | MARTY KELEM<br>PHONE: 310-822-2400 (EXT 1003)<br>EMAIL: MKELEM@SPECTRATEK.NET | TRADE PAYABLES | | | | $ 69,688.98 |
| 23 | OXYGEN SERVICE COMPANY<br>TOM O'CONNOR<br>111 PIERCE BUTLER ROUTE<br>ST PAUL, MN 55164-0017 | TOM O'CONNOR<br>PHONE: 651-644-7273<br>EMAIL: TOMOCONNOR@OXYSERV.COM | TRADE PAYABLES | | | | $ 53,815.30 |
| 24 | DAVIS - STANDARD LLC<br>DAVID LORENC<br>1 EXTRUSION DRIVE<br>PAWCATUCK, CT 15251-4772 | DAVID LORENC<br>PHONE: 908-895-4303<br>EMAIL: DLORENC@DAVIS-STANDARD.COM | TRADE PAYABLES | | | | $ 51,335.00 |
| 25 | SHADOW PLASTICS LLC<br>JASON BEAM<br>2301 PIONEER AVE<br>RICE LAKE, WI 54868 | JASON BEAM<br>PHONE: 715-234-9186<br>EMAIL: JASON@SHAOWPLASTICS.COM | TRADE PAYABLES | | | | $ 49,840.65 |
| 26 | WINDMOELLER & HOELSCHER CORPORATION<br>KRISTY PERRY<br>23 NEW ENGLAND WAY<br>LINCOLN, RI 02865 | KRISTY PERRY<br>PHONE: 401-333-7822<br>EMAIL: KRISTY.PERRY@WUH-GROUP.COM | TRADE PAYABLES | | | | $ 45,765.61 |
| 27 | OLD DOMINION FREIGHT LINE INC.<br>ERIK PONCIUS<br>14933 COLLECTIONS CENTER DRIVE<br>CHICAGO, IL 606934933 | ERIK PONCIUS<br>PHONE: 336-822-5166 (INVOICING) 336-822-5168 (CLAIMS)<br>EMAIL: ERIK.PONCIUS@ODFL.COM | TRADE PAYABLES | | | | $ 44,238.87 |
| 28 | MALARK INDUSTRIES, INC<br>STEPHANIE MASTELLER<br>9200 FORESTVIEW LANE N.<br>MAPLE GROVE, MN 55369 | STEPHANIE MASTELLER<br>PHONE: 763-428-3564<br>EMAIL: SMASTELLER@MALARK.COM | TRADE PAYABLES | | | | $ 43,085.93 |
| 29 | THE WINSTON COMPANY<br>DEREK BOEGEMAN<br>2837 ANTHONY LANE SOUTH<br>MINNEAPOLIS, MN 55418-3269 | DEREK BOEGEMAN<br>PHONE: 651-271-0095<br>EMAIL: DEREK@WINSTON-COMPANY.COM | TRADE PAYABLES | | | | $ 42,755.11 |
| 30 | PREMIUM BALLOON ACCESSORIES<br>DEDE NELSON<br>6935 RIDGE ROAD<br>WADSWORTH, OH 44281 | DEDE NELSON<br>PHONE: 800-239-4547<br>EMAIL: DEDEJNELSON@PREMIUMBALLOON.COM | TRADE PAYABLES | | | | $ 41,386.90 |

**Fill in this information to identify the case and this filing:**

Debtor Name ___Anagram Holdings, LLC_____

United States Bankruptcy Court for the: __Southern_____ District of __Texas____
(State)

Case number (*If known*): _____

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☒ Other document that requires a declaration___Consolidated Corporate Ownership Statement and List of Equity Interest Holders_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  __11/08/2023__         ✗ __/s/ Adrian Frankum_____
                MM / DD / YYYY              Signature of individual signing on behalf of debtor

                                            _Adrian Frankum_____
                                            Printed name

                                            _Chief Restructuring Officer_____
                                            Position or relationship to debtor

Official Form 202              **Declaration Under Penalty of Perjury for Non-Individual Debtors**

# IN THE UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ANAGRAM HOLDINGS, LLC, *et al.*, [1] | ) ) | Case No. [_] |
| Debtors. | ) ) ) | (Joint Administration Requested) |

## CONSOLIDATED CORPORATE OWNERSHIP STATEMENT AND LIST OF EQUITY INTEREST HOLDERS PURSUANT TO FED. BANKR. P. 1007(a)(1), 1007(a)(3), AND 7007.1

Pursuant to rules 1007(a)(1), 1007(a)(3), and 7007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), attached hereto as Exhibit A is an organizational list reflecting all of the ownership interests in Anagram Holdings, LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"). The Debtors respectfully represent as follows:

1. Each of the Debtors identified on Exhibit A is 100% owned by its direct parent.

2. Party City Holdings Inc., which owns 100% of the outstanding equity interests of Anagram Holdings, LLC, is not a debtor in these chapter 11 cases.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Anagram Holdings, LLC (8535); Anagram International, Inc. (2523) and Anagram International Holdings, Inc. (5837). The location of the Debtors' service address for purposes of these chapter 11 cases is: 7700 Anagram Drive, Eden Prairie, MN 55344. For the avoidance of doubt, the Debtors' chapter 11 cases are not proposed to be consolidated with Party City Holdco Inc. and its affiliate debtors which emerged from chapter 11 cases in this Court on October 12, 2023. *See In re Party City Holdco Inc., et. al.,* Case No. 23-90005 (MI) (Bankr. S.D. Tex). Any reference herein to the Debtors does not include the debtor-entities that were administered in the Party City chapter 11 cases

**Exhibit A**

| Debtor | Equity Holder(s) | Percentage of Ownership | Last Known Address of Equity Holder |
|---|---|---|---|
| Anagram Holdings, LLC | Party City Holdings, Inc. (non-Debtor) | 100% | 100 Tice Blvd. Woodcliff Lake, NJ 07677 |
| Anagram International, Inc. | Anagram Holdings, LLC | 100% | 7700 Anagram Drive Eden Prairie, MN 55344 |
| Anagram International Holdings, Inc. | Anagram International, Inc. | 100% | 7700 Anagram Drive Eden Prairie, MN 55344 |