**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| AMALGAM LIQUIDATION, LLC, *et al.*, [1] | § § § | Case No. 23-90901 (MI) |
| | § § | (Jointly Administered) |
| Debtors. | § § § | |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING CASE
SETTLEMENT PURSUANT TO SECTIONS 105, 363, 365 AND 503 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 9019; (II) AUTHORIZING
DISMISSAL OF THE CHAPTER 11 CASES PURSUANT TO SECTIONS 1112(B) AND
349 OF THE BANKRUPTCY CODE AND (III) GRANTING RELATED RELIEF**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE DEBTORS' COUNSEL TO RESOLVE THE DISPUTE. IF YOU AND THE DEBTORS CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE DEBTORS' COUNSEL. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS MOTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.**
>
> **IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Amalgam Liquidation, LLC (f/k/a Anagram Holdings, LLC) ("Amalgam") and its

debtor affiliates in the above- captioned chapter 11 cases, as debtors and debtors in possession

---

[1]     The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Amalgam Liquidation, LLC (f/k/a Anagram Holdings, LLC) (8535); Amalgam Liquidation International, Inc. (f/k/a Anagram International, Inc.) (2523) and Amalgam Liquidation International Holdings, Inc. (f/k/a Anagram International Holdings, Inc.) (5837). The location of the Debtor's service address for purposes of these chapter 11 cases is: 7700 Anagram Drive, Eden Prairie, MN 55344.

1

(collectively, the "Debtors"), respectfully represent as follows in support of this motion (this "Motion"):

**Preliminary Statement**

1.      By this Motion, the Debtors request approval of a settlement (the "Case Settlement") among the (i) Debtors and (ii) certain holders of Second Lien Notes[2] listed on Schedule 1[3] to the Order who collectively hold approximately 83% of the Second Lien Notes as of the filing of this Motion (the "Settling Second Lien Noteholders" and, together with the Debtors, the "Settlement Parties").

2.      The Case Settlement is a global settlement and compromise among the Debtors and the Settling Second Lien Noteholders that resolves any and all claims and causes of action that the Settlement Parties have or may have against each other, including any claim by the Settling Second Lien Noteholders for adequate protection of the collateral securing the Second Lien Notes. If approved, the Case Settlement allows the Debtors to efficiently complete these chapter 11 cases by transferring their remaining assets to the Second Lien Noteholders following the completion of a few remaining case administration matters, primarily final fee applications of estate professionals.  The Debtors request that, after the Case Settlement is approved and the remaining administrative matters are completed, the Court dismiss these chapter 11 cases.

3.      On December 29, 2023, the Debtors sold substantially all of their assets (the "Sale") to Celebration Bidco, LLC (the "Purchaser"), an entity formed and controlled by an ad hoc group of holders of approximately 60% in principal amount of the Debtors' First Lien Notes and

---

[2]     Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the First Day Declaration, the Sale Order (each as defined below) or that certain Asset Purchase Agreement, dated as of November 8, 2023 (as amended, or modified from time to time, the "APA"), among the Debtors and Celebration Bidco, LLC, as applicable.

[3]     The Debtors reserve the right to amend and/or supplement Schedule 1 to include any additional Second Lien Noteholders who consent to the Case Settlement by written notice provided to counsel to the Debtors.

more than 50% in principal amount of the Debtors' Second Lien Notes (including many of the Settling Second Lien Noteholders).  The Debtors estimate that, following payment of the Debtors' and lenders' professional fees, the Debtors will have no more than $1.2 million (the "Remaining Cash").

4.       The Purchaser credit bid the DIP Facility and First Lien Notes in full and assumed substantially all of the Debtors' contracts and all pre- and post-petition trade claims.  As a result, only the Second Lien Notes remain outstanding in the principal amount of approximately $110 million. The Second Lien Notes were granted liens on substantially all of the Debtors' assets including adequate protection liens on post-petition assets pursuant to the Final DIP Order.[4] Given the size and priority of their claims relative to any other creditors (if any), these cases are effectively being administered for the benefit of the Second Lien Noteholders and any case resolution will need their consent.  Notably, following assumption and satisfaction of the claims of the members of the Creditors' Committee in accordance with the Sale, the Committee was disbanded.

5.       Accordingly, since the Sale closed, the Debtors have been in discussions with a group of Second Lien Noteholders who collectively hold approximately 83% of Second Lien Notes and their advisors regarding the means to resolve these chapter 11 cases. These Second Lien Noteholders assert that they are entitled to the Debtors' remaining assets on account of their secured claims and that they will not support a chapter 11 plan that needlessly depletes the estates' remaining value. Absent a consensual resolution, the Second Lien Noteholders could seek to lift

---

[4]     The "Final DIP Order" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 226].

the automatic stay for the Debtors' inability to adequately protect their collateral or, alternatively, would move to convert the cases to chapter 7.

6.     To avoid litigation, the Debtors have negotiated an agreement with the Settling Second Lien Noteholders to consensually resolve these chapter 11 cases and any issues relating to the Second Lien Notes. Under the terms of the Case Settlement, the Debtors will assign all remaining assets, consisting of the Remaining Cash, to the Second Lien Trustee (as defined below) to be distributed to the Second Lien Noteholders in accordance with the Second Lien Notes Indenture. The Settling Second Lien Noteholders, the Second Lien Trustee, and the Debtors will grant mutual releases and, in furtherance of such mutual releases and with the support of the Settling Second Lien Noteholders, the Debtors will release their directors, officers and managers.

7.     The Case Settlement is fair, reasonable, and in the best interest of the Debtors' estates and that the subsequent dismissal of these chapter 11 cases is appropriate. The Second Lien Noteholders are the only creditors with an economic interest in these chapter 11 cases given the priority and size of their claims. Accordingly, without their support, the Debtors cannot resolve these chapter 11 cases through confirmation of a chapter 11 plan. By transferring the limited remaining residual value to the Second Lien Noteholders in accordance with this Case Settlement (and consistent with the absolute priority rule), the Debtors will maximize the return to their creditors without incurring the expense necessary to confirm a plan or convert the cases. Accordingly, the Court should approve the Case Settlement and dismissal.

## Relief Requested

8.     By this Motion, pursuant to sections 105(a), 363, 365 and 503 of the Bankruptcy Code, Rules 2002, 6004, 6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 1075-1, 2002-1 and 9013 of the Local Rules, the Debtors

request entry of an order attached hereto as **Exhibit A** (the "Order"), approving the Case Settlement and granting related relief.

## Jurisdiction

9.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## General Background

10.      Prior to the Sale, the Debtors were a leading manufacturer of foil balloons and inflated décor, distributing and selling their products both domestically and internationally. The Debtors are subsidiaries of Party City Holdings Inc. (together with its affiliates other than the Debtors, "Party City"), but since December 6, 2022, they have been overseen by Mr. William Transier, an independent director.

11.      On November 8, 2023 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 the Bankruptcy Code in order to sell substantially all of their assets. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"). No trustee or examiner has been appointed in these chapter 11 cases.

12.      On November 20, 2023, the United States Trustee for Region 7 (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.   On January 18, 2024, the U.S. Trustee

disbanded the Creditors' Committee because each of the members of the Committee had resigned from the Creditors' Committee following payment in full of their prepetition claims.  *See* Docket No. 342.

13.    As of the Petition Date and prior to the Sale, the Debtors' funded indebtedness totaled approximately $249.2 million (the "Prepetition Debt") in principal amount consisting of: (i) a $15 million ABL credit facility with $6.2 million outstanding; (ii) $125.3 million of First Lien Notes; and (iii) $108.9 million of Second Lien Notes. The Debtors granted liens on substantially all of their assets to secure the Prepetition Debt.

14.    On December 6, 2023, the Court entered the Final DIP Order which, subject to challenge by the Creditors' Committee, included customary releases and acknowledgements in favor of the Prepetition Debt and the holders thereof (including the Second Lien Notes). The Second Lien Notes were also granted adequate protection liens on substantially all of the Debtors' assets, including post-petition assets. The Creditors' Committee was afforded a customary investigation period and investigation budget under the Final DIP Order to challenge these releases and acknowledgments but never asserted any claims or causes of action.  The investigation period has expired.

15.    Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Adrian Frankum in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 19] (the "First Day Declaration").

### Sale Transaction & Residual Assets

16.    On December 22, 2023, the Court entered the *Order (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets, (C) Authorizing the Assumption*

*and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. 285] (the

"Sale Order"), pursuant to which the Debtors sold substantially all of their assets to the Purchaser.

17.     The purchase price for the Debtors' assets consisted of: (i) a credit bid of all outstanding amounts and obligations under the DIP Notes Facility and the First Lien Notes; (ii) the assumption of all of the Debtors' outstanding material contracts; (iii) the $1.5 million Wind Down Amount; and (iv) the assumption of the Assumed Liabilities, including all trade claims, whether arising pre- or postpetition.

18.     On December 29, 2023, in connection with the Sale, (i) the Debtors and Party City agreed to amend and restate certain intercompany contracts into a single, integrated agreement (the "Omnibus Agreement"), and (ii) upon the closing on the Sale, the Omnibus Agreement was assigned to Purchaser as a purchased contract under the APA. Party City currently retains its equity interest in the Debtors.

19.     In accordance with the Sale Order, the Debtors retained (i) a segregated escrow account (the "Professional Fees Escrow Account"), which the Debtors funded with the aggregate estimated amount of fees that accrued to the Retained Professionals (as defined below) (the "Professional Fees") as of the Closing Date *plus* the $1.5 million Wind Down Amount and (ii) a segregated account (the "Lender Professional Fees Account" and, together with the Professional Fees Escrow Account, the "Debtor Accounts"), which the Debtors funded to pay the estimated fees and expenses owing to certain professionals retained by the secured parties under the DIP facilities and Prepetition Debt (collectively, the "Lender Professional Fees") that had accrued prior to Closing. All Lender Professional Fees have been paid in full and, pursuant to the Sale Order, the Debtors are entitled to any amounts (if any) remaining in the Lender Professional Fees Account.

20.     Aside from the residual funds in the Debtor Accounts, the Debtors do not have any remaining assets and no longer conduct any business. The Debtors do not believe they hold any litigation claims because the Purchaser acquired all claims and causes of action related to the Debtors' business (other than certain excluded claims, such as any potential claims against the Debtors' current or prior directors and officers).

21.     On January 2, 2024, the Court entered the Bar Date Order,[5] establishing February 7, 2024 at 5:00 p.m. (prevailing Central Time) as the general bar date and May 6, 2024 at 5:00 p.m. (prevailing Central Time) as the governmental bar date. The Debtors understand that all valid pre- and post-petition administrative and unsecured claims were paid, or will be paid, by the Purchaser in accordance with the APA or pursuant to the Case Settlement.[6] However, even in the unlikely event that there are valid administrative or unsecured claims that remain outstanding, they have no prospect of any recovery given that approximately $110 million of principal remains outstanding under the Second Lien Notes, which are secured by all of the Debtors' assets, and the Debtors cannot satisfy such claims.

## Case Settlement

22.     The Case Settlement amongst the Debtors and the Settling Second Lien Noteholders resolves all issues among the parties, including any claims for adequate protection. The key terms of the Case Settlement, set forth in the Order, are as follows:[7]

---

[5]   The *Order (I) Establishing Deadlines to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* [Docket No. 311] (the "Bar Date Order").

[6]   Certain proofs of claim have been filed in these chapter 11 cases purporting to be administrative claims. However, the Debtors reviewed such proofs of claim and determined that they are not valid administrative claims against the Debtors' estates, including because they have been assumed by the Purchaser. The Debtors will serve this Motion on any party that has filed a proof of claim prior to the bar date.

[7]   The following is intended to be a summary of the Case Settlement and is subject in all respects to the terms set forth in the Order attached hereto as **Exhibit A**. To the extent of any conflict between the description of the Case Settlement in this Motion and in the Order, the Order shall govern in all respects.

| Summary of Case Settlement | |
|---|---|
| **Settlement Payment** | On or prior to the Dismissal Date (as defined below), the Debtors shall transfer to the Second Lien Trustee all Remaining Cash *less* the Indemnity Amount (defined below) (the "Settlement Payment") for distribution to the Second Lien Noteholders in accordance with the Second Lien Notes Indenture. |
| **Indemnification Reserve** | Prior to making the Settlement Payment, the Debtors shall fund $200,000 of cash (the "Indemnity Amount") to a segregated account (the "Indemnity Account") held at a third party agent (the "Indemnity Agent") to be identified by the Debtors, which Indemnity Amount shall be used, if necessary, solely to pay or reimburse all out-of-pocket fees, costs and expenses (including reasonable and documented legal fees) incurred by any D&O (as defined below), in its capacity as such, in defending any civil, criminal, regulatory or administrative action, cause of action, suit, demand, claim, case, litigation, arbitration, inquiry, hearing, dispute, investigation or other proceeding to the extent resulting from, arising out of or relating to conduct of such D&O, in his or her capacity as such, occurring prior to the date such D&O resigns or is removed as a director, office or manager of the Debtors.<br><br>The Indemnity Agent shall provide prompt written notice to the Second Lien Trustee of any request for amounts to be released from the Indemnity Account.<br><br>The Indemnity Agent shall turn over any funds remaining in the Indemnity Account on the date that is five (5) years after the Dismissal Date to the Second Lien Trustee for distribution to the Second Lien Noteholders in accordance with the Second Lien Notes Indenture.<br><br>For the avoidance of doubt, nothing in the Order shall terminate, reject, alter or modify any insurance policy or indemnity benefiting the Debtors, their estates or their D&Os. |
| **Mutual Release[8]** | Effective on and after the Settlement Approval Date, pursuant to the Order, in exchange for good and valuable consideration provided by each of the Released Parties, each Released Party and its respective assets and property shall be, and shall be deemed to be, conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each other Releasing Party and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Case |

---

[8]    Capitalized terms set forth in the Mutual Release and Exculpation are defined in the Order.

| | |
|---|---|
| | Settlement, the Sale, the Debtors' indebtedness and securities, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' sale or marketing efforts, intercompany transactions between or among a Debtor, another Debtor and/or an Affiliate of a Debtor (including Party City), these chapter 11 cases, the formulation, preparation, dissemination, negotiation, execution, amendment, termination or filing, as applicable, of the APA and ancillary or related documents, First Lien Notes Indenture, Second Lien Notes Indenture, ABL Facility, DIP Notes Facility, DIP Notes Documents, DIP ABL Facility, DIP ABL Agreement and the documents related thereto or any restructuring or sale transaction, contract, instrument, release, or other agreement or document relating to any of the foregoing, created or entered into before or during these chapter 11 cases, any Avoidance Actions, the pursuit, administration and implementation of the Sale or the Case Settlement, including the distribution of property pursuant to the Sale or Order or under any other related agreement, the business or contractual arrangements between any Debtor and any Released Party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Dismissal Date related or relating to any of the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above (the "Mutual Release") shall not release (a) any rights or obligations of any party or Entity under the Order, the APA, the Second Lien Notes Indenture (including any indemnification rights of the Second Lien Trustee), the Omnibus Agreement or any related documents or under any document, instrument, or agreement to implement the Case Settlement or the Sale, or any Claim or obligation arising under the Order or (b) any person from any claim or cause of action related to an act or omission that constitutes intentional fraud, willful misconduct, or gross negligence.

Nothing contained in the Order shall constitute or be deemed a waiver of any rights, claims, indemnities, or Causes of Action that the Debtors, their estates, their D&Os or any Entity may hold under any policies of insurance or relating to any indemnity benefiting the Debtors, their estates or their D&Os.

Upon the Settlement Approval Date, the Settling Second Lien Noteholders shall agree not to, and shall be forever barred, estopped, and permanently enjoined from, exercising, or directing the Second Lien Trustee to exercise, any rights or remedies against the Debtors or their Related Parties with respect to any released claims, including any claims for payment arising under the Second Lien Notes Indenture or the Second Lien Notes. |
| **Exculpation** | Pursuant to the Order and except as otherwise specifically provided in the Order, to the fullest extent authorized by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party shall be exculpated from any Cause of Action for any claim related to any act |

<table>
<tr>
<td></td>
<td>

or omission in connection with, relating to, or arising out of, from the Petition Date through the Dismissal Date, these chapter 11 cases, the Case Settlement, the Sale, the Debtors' indebtedness and securities, the Debtors' sale or marketing efforts, intercompany transactions between or among a Debtor and another Debtor, and/or an Affiliate of a Debtor (including Party City), the formulation, preparation, dissemination, negotiation, amendment, or filing or termination, as applicable, of the APA and ancillary or related documents, First Lien Notes Indenture, Second Lien Notes Indenture, ABL Facility, DIP Notes Facility, DIP Notes Documents, DIP ABL Facility, DIP ABL Agreement and the documents related thereto, or any restructuring or sale transaction, contract, instrument, release or other agreement or document relating to the foregoing created or entered into during these chapter 11 cases, the Debtors' sale or marketing efforts, the pursuit, administration and implementation of the Sale or the Case Settlement, including the distribution of property pursuant to the Sale or Order or under any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place from the Petition Date through the Dismissal Date related or relating to any of the foregoing, except for claims related to any act or omission that is judicially determined in a final order to have constituted intentional fraud, willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above (the "Exculpation") shall not operate to waive or release the rights of any Entity to enforce the Case Settlement, the Sale, the APA, the Omnibus Agreement or any document, instrument, or agreement executed to implement the foregoing or any claim or obligation arising under the foregoing.

The release and exculpation provisions shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability, including pursuant to any prior order of the Court or agreement among the Settlement Parties.
</td>
</tr>
<tr>
<td><strong>Payment of Professional Fees</strong></td>
<td>

The Order shall provide that:

- All professionals whose retentions are approved by the Court, including professionals retained by the Debtors and the Creditors' Committee (the "Retained Professionals"), seeking approval by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Dismissal Date shall (i) file, on or before the date that is twenty-one (21) days after entry of the Order (the date of entry of the Order, the "Settlement Approval Date"), their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred (the "Final
</td>
</tr>
</table>

11

| | |
|---|---|
| | Fee Applications"), and serve such Final Fee Applications on counsel to the Debtors, the U.S. Trustee and counsel to the ad hoc group of Settling Second Lien Noteholders represented by Milbank LLP (the "Ad Hoc Group"). |
| | • Parties in interest shall have fourteen (14) days from the date of filing of the applicable Final Fee Application to object to the Final Fee Application by filing a written objection with the Court (a "Fee Application Objection"). If any Fee Application Objections are filed, the Debtors shall schedule a hearing with the Court on the applicable Final Fee Application. |
| | No later than three (3) days after the applicable Final Fee Application has been approved by the Court, the Debtors shall pay all approved Professional Fees to the applicable Retained Professional from the funds in the Professional Fees Escrow Account. |
| | In connection with the Case Settlement, on the Dismissal Date, the Debtors shall pay in cash, all reasonable, documented and invoiced fees and out-of-pocket expenses incurred through and including the Dismissal Date of Wilmington Savings Fund Society, FSB, as trustee and collateral trustee under the Second Lien Notes (the "Second Lien Trustee"), Kilpatrick Townsend & Stockton LLP, as counsel to the Second Lien Trustee, Milbank LLP, as legal advisor to the Ad Hoc Group, and Quinn Emanuel Urquhart & Sullivan, LLP, as legal advisor to Silver Point Capital in connection with these chapter 11 cases (collectively, the "Second Lien Advisors" and, such fees and expenses, the "Second Lien Fees and Expenses"), related to the Case Settlement; *provided*, that the Second Lien Fees and Expenses paid to Quinn Emanuel Urquhart & Sullivan, LLP shall not exceed $250,000. |
| | Following the Dismissal Date, the fees and expenses of the Second Lien Trustee (including annual trustee fees and counsel fees and expenses) related to effectuating distributions and otherwise implementing the Case Settlement, and any other unpaid Second Lien Trustee fees and expenses, shall be payable from the Settlement Payment and other money or property held or collected by the Second Lien Trustee, in accordance with the Second Lien Notes Indenture. |
| **Case Resolution Procedures and Dismissal** | The Settlement Parties have agreed to support and not object to the entry of the Order dismissing these chapter 11 cases. Upon payment of all approved Professional Fees and the Settlement Payment (the "Dismissal Date"):<br><br>• The chapter 11 cases of each of the Debtors shall be deemed dismissed and the Debtors and Party City Holdings Inc., as the holder of the equity interests in Amalgam, shall, without the need for further action on the part of this Court, be authorized |

to take all steps to dissolve the Debtors in accordance with applicable state law;

- The chapter 11 cases of each of the Debtors shall be deemed "fully administered" within the meaning of section 350 of the Bankruptcy Code and the dockets of the Debtors shall be marked as "Closed" by the Clerk of the Court;

- The Debtors' previous and existing directors, managers and officers (the "D&Os") and estate professionals shall have no continuing obligations or duties to the Debtors on or after the Dismissal Date and each D&O and estate professional that has not already resigned shall be deemed to have resigned or shall otherwise cease to be a director, officer or manager or professional of the applicable Debtor as of the Dismissal Date;

- Any executory contract or unexpired lease that has not been assumed by the Debtors, including in connection with the Sale, shall be deemed rejected, *provided,* that nothing in this paragraph shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and their estates or the Debtors' D&Os; *provided, further*, that nothing in this paragraph shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease; and

- The Second Lien Notes and the Second Lien Notes Indenture shall continue in effect to (i) allow the Second Lien Noteholders to receive distributions in accordance with the Case Settlement, (ii) allow the Second Lien Trustee to make distributions in accordance with the Case Settlement, and (iii) preserve any rights of the Second Lien Trustee to payment of fees, expenses, and indemnification obligations as against any distributions to the Second Lien Noteholders, including any rights to priority of payment and/or to exercise charging liens pursuant to the Second Lien Notes Indenture.

The Settlement Parties agree that, within two business days after the Dismissal Date, the Debtors shall file a notice of dismissal of chapter 11 cases (the "Dismissal Notice") and serve such Dismissal Notice on the U.S. Trustee, counsel to the Settling Second Lien Noteholders, counsel to the Second Lien Trustee, all parties who have requested notice pursuant to Bankruptcy Rule 2002, and any other party deemed appropriate by the Debtors.

Notwithstanding anything to the contrary herein, the Order, the Final DIP Order and the Sale Order, including the rights granted to the

13

| | |
|---|---|
| | Purchaser thereunder, shall remain effective and binding on all parties in interest following the Dismissal Date. |
| **Retention of Jurisdiction** | The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of the Order and any other order of this Court entered in the Chapter 11 Cases. |

**Basis for Relief**

A.     **The Case Settlement is Fair and Reasonable, in the Best Interest of the Debtors' Estates and Should be Approved**

23.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See Off. Comm. of Unsecured Creditors v. Moeller (In re AGE Refin. Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the sound discretion of the bankruptcy court. *In re Asarco LLC*, Case No. 05-21207, 2009 Bankr. LEXIS 5721 (Bankr. S.D. Tex. June 5, 2009) ("[a]pproval of a compromise lies within the sound discretion of the bankruptcy court.") (citing *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984)). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Jackson Brewing*, 624 F.2d at 602 (citations omitted).

24.     The Fifth Circuit sets forth a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. *Id.* The factors the Court considers are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *AGE Refin.*, 801 F.3d at 540 (internal citations omitted).  The Court should

14

determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

25.     Further, section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b)(1). The Fifth Circuit recognizes that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g., ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.),* 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986)); *In re ASARCO, LLC,* 441 B.R. 813, 830 (S.D. Tex. 2010); *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.),* 331 B.R. 251, 254 (N.D. Tex. 2005). Additionally, the Court may grant the relief requested under section 105(a) of the Bankruptcy Code, which provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

26.     The Case Settlement, including the Settlement Payment, falls well within the range of reasonableness, is fair and equitable, and should be approved.  The Case Settlement allows for the consensual resolution of these chapter 11 cases without the need for expensive and time-consuming litigation with the Second Lien Noteholders, the only remaining creditor group with an economic interest in the Debtors' estates. The support of the Settling Second Lien Noteholders would be required to form an impaired accepting class necessary to confirm a plan of liquidation that "crams down" general unsecured claims (to the extent any exist) who would not

receive a recovery and would be deemed to reject the plan.  The Second Lien Noteholders have a lien on and are entitled to all of the residual value of the Debtors' estates and, in the absence of the Case Settlement, may seek to lift the automatic stay under section 362(d) of the Bankruptcy Code due to a lack of adequate protection of their collateral or convert these cases to chapter 7.  The Settling Second Lien Noteholders, who collectively hold approximately 83% of the Second Lien Notes, have informed the Debtors that they do not support a plan of liquidation given that the costs of consummating it would deplete all residual assets of the Debtors' estates.  The Case Settlement allows the Debtors to avoid these conflicts and gives the Debtors a path forward to an efficient end of these chapter 11 cases in accordance with the absolute priority rule.

27.     The Case Settlement is also a more preferable outcome to a conversion of these chapter 11 cases to chapter 7.  In a chapter 7 liquidation, the chapter 7 trustee would simply distribute the residual value to the Second Lien Noteholders given the strict priority scheme of distributions in a chapter 7 scenario and the approximately $110 million of outstanding principal amount of Second Lien Notes. A chapter 7 liquidation would be more costly because the trustee would retain a new set of advisors and would deduct a fee from any estate distributions. Accordingly, the Settling Second Lien Noteholders, who would be the only beneficiary of a chapter 7 liquidation, prefer to enter into the Case Settlement rather than pursue a conversion.

28.     The Case Settlement is the product of good faith, arms' length bargaining between the Debtors and the Settling Second Lien Noteholders, the sole remaining stakeholder group in these chapter 11 cases with an economic interest in the estates. The Settling Second Lien Noteholders hold the vast majority of remaining claims against the Debtors and are supportive of the Case Settlement, allowing the Debtors to end these cases in a highly consensual, expeditious manner. Accordingly, for the reasons set forth herein, the Debtors believe that the Case Settlement

16

represents a fair and reasonable compromise that is in the best interest of the Debtors' estates. The Debtors respectfully request that the Court approve the Case Settlement.

**B.** **The Release and Exculpation Provisions in the Order are Appropriate and Should be Approved in Connection With the Case Settlement**

29.     The mutual releases provided by the Debtors, their Related Parties, and the Settling Second Lien Noteholders and their Related Parties are appropriate because the releases are necessary to achieve the Case Settlement and provide the Settlement Parties finality.

30.     The Debtors do not believe there are any viable claims or causes of action against any of the Released Parties. The Debtors, who have been controlled by an independent director since December 2022, do not believe that any viable claims or causes of action exist against the Second Lien Noteholders or the Second Lien Trustee. Accordingly, the Debtors gave releases to the Second Lien Noteholders and the Second Lien Trustee (and the ABL Lender and the First Lien Noteholders) in the Final DIP Order. The Debtors' conclusion was corroborated by the Creditors' Committee, who was afforded an investigation period and an investigation budget under the Final DIP Order and never asserted any claims or causes of action.  Therefore, the release of the Settling Second Lien Noteholders and the Second Lien Trustee is a reasonable and appropriate action by the Debtors.

31.     The Debtors' release of its D&Os is likewise appropriate and reasonable. The D&Os have guided the Debtors through the chapter 11 cases and their contributions facilitated the successful Sale, pursuant to which all non-disputed trade claims were paid, almost all of the Debtors' executory contracts were assumed, and all of the Debtors' employees retained their jobs. In addition, the Debtors and the Settling Second Lien Noteholders do not believe there are viable estate causes of action against the D&Os. Neither the Creditors' Committee nor any other party in interest ever suggested that any such claims existed. Further, the Settling Second Lien Noteholders,

17

who are the beneficiaries of any such claims or causes of action, have agreed to release the D&Os and support the Debtors' giving such estate releases.

32.     Importantly, the releases sought are fully consensual, and the Case Settlement does not contemplate any non-consensual third party releases.

33.     Courts have approved similar consensual release and exculpation provisions for debtors in connection with a settlement effectuating the wind-down of chapter 11 cases. *See, e.g., Basic Energy Services, Inc., et al.*, Case No. 21-90002 (DRJ) (Bankr. S.D. Tex. Nov. 8, 2021) [Docket No. 686] (approving global settlement following sale transactions containing broad mutual releases of the debtors, creditors' committee and secured lenders and each of their related parties, including the debtors' directors and officers); *CBL & Assocs. Properties, Inc.*, Case No. 20-35226 (DRJ) (Bankr. S.D. Tex. Aug. 19, 2021) [Docket No. 1417] (approving settlement agreement containing mutual releases of dismissed debtor, secured lender, and guarantor for obligations other than contained in the agreement and dismissing chapter 11 cases of debtor); *In re Buffet Partners, L.P.*, 2014 Bankr. LEXIS 3204 (dismissing debtors' cases and leaving effective an order approving a settlement containing mutual releases among the debtors, the purchaser of the debtors' assets, and the creditors' committee); *In re L REIT, LTD.*, Case No. 18-36881 (DRJ) (Bankr. S.D. Tex. Dec. 5, 2018) [Docket No. 268] (approving an order agreed to among all parties in interest to implement a settlement, dismissal of chapter 11 cases and releases); *In re Dawahare's of Lexington, LLC*, Case No. 08-51381 (Bankr. E.D. Ky. Dec. 30, 2008) [Docket No. 316] (dismissing debtor's case after approving a settlement with release provisions and exculpating the debtor and creditors' committee from liability in connection with the debtor's motion to dismiss its case); *In re New Weathervane Retail Corp.*, Case No. 04-11649 (PJW) (Bankr. D. Del. Sept. 2, 2005) [Docket No. 566] (dismissing debtors' cases after approving a settlement with release and

18

exculpation provisions and exculpating the debtors and creditors' committee from liability in connection with the debtor's distribution and dismissal procedures, except for gross negligence or willful misconduct).

34.     Accordingly, for the reasons set forth herein, the consensual releases and exculpations in the Case Settlement are appropriate and should be approved.

## C.     Dismissal of the Debtors' Chapter 11 Cases is Both Permissible and Appropriate

35.     Dismissal of the Debtors' chapter 11 cases is appropriate. Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of sixteen grounds for dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(A)-(P*); In re Ford Steel, LLC*, 629 B.R. 871, 879 (Bankr. S.D. Tex. 2021). Cause may be established on the ground of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A); *Ford Steel, LLC*, 629 B.R. 871 at 879; *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004) (citations omitted). Cause also exists where a debtor is unable to effectuate a chapter 11 plan or where reorganization within a reasonable period of time is impracticable. *Tuli v. United States Tr.*, 124 F. App'x 830, 831 (5th Cir. 2005); *Bronson v. Thompson (In re Bronson)*, Nos. AZ-12-1320-MkDJu, 08-00777, 2013 WL 2350791, at *8 (B.A.P. 9th Cir. May 29, 2013) ("When it becomes apparent to the court that the debtor will not be able to confirm and effectuate a plan within the foreseeable future, the bankruptcy court should . . . dismiss or convert.").

36.     As described above, the Debtors cannot effectuate a chapter 11 plan due to their inability to form an impaired accepting class necessary to "cram down" general unsecured claims (to the extent any exist). The costs of consummating a chapter 11 plan would far outweigh any benefit and would deplete any remaining assets to the detriment of the creditors. Further, as a

19

result of the Sale and Case Settlement, the Debtors have no assets or operations around which to reorganize. Accordingly, cause exists to dismiss the Debtors' cases.

37.     Once a court determines that cause exists to dismiss a chapter 11 case, dismissal or conversion must be in the best interests of creditors and the Debtors' estate. 11 U.S.C. § 1112(b); *see, e.g., In re M & C P'ship, No.* 19-11529, 2021 Bankr. LEXIS 1135 (Bankr. E.D. La. Apr. 28, 2021). Dismissal is in the "best interests" of creditors and the Debtors' estates where: (i) a debtor has nothing to reorganize and any remaining assets are fixed and liquidated; (ii) where a debtor demonstrates the ability to oversee its own liquidation; and (iii) where an interested party, other than the debtor, supports the dismissal of the debtor's chapter 11 case. *See Camden Ordnance Mfg. Co. of Ark., Inc. v. U.S. Tr. (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000); *Royal Tr. Bank, N.A. v. Brogdon Inv. Co. (In re Brogdon Inv. Co.)*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982).

38.     Further, dismissal is in the best interests of creditors and the Debtors' estate pursuant to section 305(a) of the Bankruptcy Code, which provides that:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

11 U.S.C. § 305(a).[9]

---

[9]   Dismissal pursuant to section 305(a) is appropriate where the court finds that both creditors and the debtor would be better served by dismissal. *In re AMC Investors, LLC,* 406 B.R. 478, 487-88 (Bankr. D. Del. 2009). Dismissal under this provision is determined on a case-by-case basis and rests in the sound discretion of the bankruptcy court. *In re Sky Group Intern, Inc.,* 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989); *see also In re CorrLine Int'l, LLC,* 516 B.R. 106, 140 (Bankr. S.D. Tex. 2014) (citing *In re TPG Troy LLC,* 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013)). Many factors are considered when determining the best interests of creditors and the debtor, including: (i) the economy and efficiency of administration; (ii) whether federal proceedings are necessary to reach a just and equitable solution; (iii) whether there is an alternative means of achieving an equitable distribution of assets; and (iv) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case. *AMC Investors,* 406 B.R. at 488.

39.     As a result of the Sale and following approval of the Case Settlement, the Debtors have nothing left to reorganize and have no means of generating additional assets to distribute to creditors pursuant to a chapter 11 plan. Further, virtually all of the remaining stakeholders in these chapter 11 cases support this Motion and the dismissal of these cases.

40.     For the foregoing reasons, the Debtors submit that, under these circumstances, dismissal of the Debtors' cases is in the best interest of all of the Debtors' creditors and their estates.

**D.      The Relief Requested Herein Does Not Violate *Jevic***

41.     The relief requested is authorized and should be approved. The relief requested herein does not violate the United States Supreme Court's decision in *Cyzewski v. Jevic Holding Corp.,* 137 S.Ct. 973 (2017), because the Case Settlement and dismissal will not result in distributions in violation of the absolute priority rule. The Debtors' remaining stakeholder constituencies have agreed to the Case Settlement and, in the unlikely event that there are valid unsecured claims that remain outstanding (and the Debtors do not believe there are any), they have no rights to any recovery given the size and priority of the Second Lien Notes. As a result, the relief requested in this Motion and the Order do not violate the holding in *Jevic* and should be approved.

**E.      Rejection of the Debtors' Remaining Contracts is a Sound Exercise of their Business Judgment**

42.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession may, subject to the court's approval, "assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996). Whether an executory contract should be assumed or rejected is a question left to a debtor's business judgment. *See Richmond*

21

*Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *see also, Lifemark Hospitals, Inc. v. Liljeberg Enters., Inc. (Matter of Liljeberg Enters., Inc.)*, 304 F.3d 410, 438 (5th Cir. 2002).

43.     Here, the Debtors have assigned almost all of their contracts to the Purchaser in connection with the Sale. In the exercise of their sound and considered business judgment, the Debtors have determined that any remaining contracts are not necessary to the Debtors' continued business operations and would burden the estates with unnecessary administrative expenses. The Debtors respectfully submit that rejection of any remaining contracts is in the best interests of the Debtors and their estates.

**F.      Prior Orders Should Remain Binding and Continue to Have Full Force and Effect**

44.     The Debtors also request that the Order, the Final DIP Order and the Sale Order, including the rights granted to the Purchaser thereunder, remain in full force and effect and survive entry of the Order. Although section 349 of the Bankruptcy Code provides that dismissal will typically reinstate the prepetition state of affairs by re-vesting property in the debtor and vacating orders and judgments of the bankruptcy court, a bankruptcy judge may "for cause, order[] otherwise." 11 U.S.C. § 349(b). "[T]his provision appears designed to give courts the flexibility to 'make the appropriate order to protect rights acquired in reliance on the bankruptcy case.'" *Jevic*, 137 S. Ct. at 984 (citation omitted).

45.     Courts have regularly allowed orders, including those approving releases and settlements, to be given continued effect after a dismissal, notwithstanding section 349 of the Bankruptcy Code. *See, e.g., In re New Emerald Energy, LLC,* Case No. 20-41754 (ELM) (Bankr. N.D. Tex. Dec. 18, 2020) (ECF No. 154) (providing that prior orders, including a 363 sale order containing releases, will remain fully effective in all respects and will survive dismissal); *In re*

*Sunco Liquidation, Inc.,* Case No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) (ECF No. 865) (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Old Towing Co.,* Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) (ECF No. 381) (giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale); *In re TAH Windown, Inc.,* Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) (ECF No. 408) (giving orders, releases, and injunctions continuing effect); *In re City Sports, Inc.,* Case No. 15-12054 (KG) (Bankr. D. Del. Mar. 4, 2016) (ECF No. 647) (giving continued effect to previously entered orders).

Cause exists to allow the Order, the Final DIP Order and the Sale Order to be given continued effect. Parties have reasonably relied on such orders for the benefit of the Debtors and their estates. By allowing such orders to remain in full force and effect and survive dismissal, the Court will preserve the benefits of all parties' efforts and achievements in these chapter 11 cases.

## **Waiver of Bankruptcy Rule 6004(h)**

46. The Debtors request a waiver of the fourteen-day stay requirement under Bankruptcy Rule 6004(h). It is essential that the Debtors be able to consummate the transactions contemplated by this Motion as soon as possible to minimize the accrual of additional professional fees that would be administrative expenses of their estates, thereby maximizing creditor recoveries. Accordingly, the Debtors request that the Order be effective immediately upon entry and that the fourteen-day stay imposed by Bankruptcy Rules 6004(h), be waived, to the extent such stay applies.

## **Notice**

47. Notice of this Motion will be served on counsel to the Second Lien Trustee, every party that has filed a proof of claim in these chapter 11 cases, on every remaining contract

counterparty to the Debtors, and otherwise in accordance with Bankruptcy Rule 2002 and Local Rule 9013-1(d).

WHEREFORE, the Debtors respectfully request entry of the Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: February 25, 2024
　　　　Houston, Texas

Respectfully submitted,

*/s/ Tom A. Howley*
**HOWLEY LAW PLLC**
Tom A. Howley (Texas Bar No. 24010115)
Eric Terry (Texas Bar No. 00794729)
Pennzoil Place – South Tower
711 Louisiana St., Suite 1850
Houston, Texas 77002
Telephone: (713) 333-9125
Email: tom@howley-law.com
　　　 eric@howley-law.com

- and -

**SIMPSON THACHER & BARTLETT LLP**
Sunny Singh (*pro hac vice* admitted)
Nicholas E. Baker (*pro hac vice* admitted)
Moshe A. Fink (*pro hac vice* admitted)
Ashley M. Gherlone (*pro hac vice* admitted)
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
Email: Sunny.Singh@stblaw.com
　　　 NBaker@stblaw.com
　　　 Moshe.Fink@stblaw.com
　　　 Ashley.Gherlone@stblaw.com

*Counsel to the Debtors and the Debtors in Possession*

25

## Certificate of Service

I hereby certify that on February 25, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Tom A. Howley

Tom A. Howley

26