United States Bankruptcy Court
Southern District of Texas

**ENTERED**
March 21, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AMALGAM LIQUIDATION, LLC, *et al.*,[1] | § | Case No. 23-90901 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| | § | |

**ORDER (I) APPROVING CASE SETTLEMENT PURSUANT TO SECTIONS 105, 363, 365 AND 503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019; (II) AUTHORIZING DISMISSAL OF THE CHAPTER 11 CASES PURSUANT TO SECTIONS 1112(B) AND 349 OF THE BANKRUPTCY CODE AND (III) GRANTING RELATED RELIEF**

Upon the *Motion of Debtors for Entry of an Order (I) Approving Settlement Pursuant to Sections 105, 363, 365 and 503 of the Bankruptcy Code and Bankruptcy Rule 9019; and (II) Granting Related Relief*, dated February 25, 2024 [Docket No. 372] (the "Motion")[2] for entry of an order (this "Order"), pursuant to sections 105(a), 363, 365 and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement (the "Case Settlement") among the Debtors, Party City Holdings Inc. (together with its affiliates other than the Debtors, "Party City") and the Second Lien Noteholders that are party to the Case Settlement and are listed on Schedule 1[3] hereto (the "Settling Second Lien Noteholders" and, collectively with the Debtors and Party City, the "Settlement Parties") and for other related

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Amalgam Liquidation, LLC (f/k/a Anagram Holdings, LLC) (8535); Amalgam Liquidation International, Inc. (f/k/a Anagram International, Inc.) (2523) and Amalgam Liquidation International Holdings, Inc. (f/k/a Anagram International Holdings, Inc.) (5837). The location of the Debtor's service address for purposes of these chapter 11 cases is: 7700 Anagram Drive, Eden Prairie, MN 55344.

[2] Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Motion.

[3] The Debtors reserve the right to amend and/or supplement Schedule 1 to include any additional Second Lien Noteholders who consent to the Case Settlement, by written notice provided to counsel to the Debtors.

1

relief, all as more fully described in the Motion; and a hearing on the Motion having been held on March 21, 2024; and the Court having found and determined that it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that just cause exists for the relief granted herein; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that any objections to the entry of this Order that have not been withdrawn, waived, or settled, or otherwise resolved pursuant to the terms hereof are hereby denied and overruled on the merits with prejudice; and after due deliberation and sufficient cause appearing therefor:

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**<u>Approval of the Case Settlement</u>**

1.      <u>Approval of the Case Settlement</u>. The Case Settlement, as set forth herein, is appropriate under the circumstances and in the best interests of creditors. The Case Settlement is approved pursuant to sections 105(a), 363, 365 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9019, and shall be effective upon the entry of this Order (the "<u>Settlement Approval Date</u>"). Each of the Settlement Parties is authorized to execute, deliver, implement and fully perform under the Case Settlement and any and all other obligations, instruments, documents and papers, and to take any and all actions, reasonably necessary or appropriate to consummate the Case Settlement.

2.     The Debtors and the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC, are each hereby authorized and directed to, on a timely basis, take any actions they determine are necessary or appropriate in order to fund the Settlement Payment (defined below). Upon the Settlement Approval Date, the Case Settlement shall become enforceable and binding on the Settlement Parties, including, without limitation, any subsequently appointed chapter 11 or chapter 7 trustee, or other estate representative.

3.     Settlement Payment.  On or prior to the Dismissal Date (as defined below), the Debtors shall transfer to the Second Lien Trustee all remaining cash *less* the Indemnity Amount (as defined below) and the Dissolution Amount (as defined below) (the "Settlement Payment") for distribution to the Second Lien Noteholders in accordance with the Second Lien Notes Indenture.

4.     Indemnification Reserve.  Prior to making the Settlement Payment, the Debtors shall fund $200,000 of cash (the "Indemnity Amount") to a segregated account (the "Indemnity Account") held at a third party agent (the "Indemnity Agent") to be identified by the Debtors, which Indemnity Amount shall be used, if necessary, solely to pay or reimburse all out-of-pocket fees, costs and expenses (including reasonable and documented legal fees) incurred by any of the Debtors' existing directors, managers and officers ("D&O") as of the date hereof, in its capacity as such, in defending any civil, criminal, regulatory or administrative action, cause of action, suit, demand, claim, case, litigation, arbitration, inquiry, hearing, dispute, investigation or other proceeding to the extent resulting from, arising out of or relating to conduct of such D&O, in his or her capacity as such, occurring prior to the date such D&O resigns or is removed as a director, officer or manager of the Debtors.

5. The Indemnity Agent will provide prompt written notice to the Second Lien Trustee of any request for amounts to be released from the Indemnity Account. The Indemnity Agent will turn over any funds remaining in the Indemnity Account on the date that is five (5) years after the Dismissal Date to the Second Lien Trustee for distribution to the Second Lien Noteholders in accordance with the Second Lien Notes Indenture.

6. For the avoidance of doubt, nothing in this Order shall terminate, reject, alter or modify any insurance policy or indemnity benefiting the Debtors, their estates or their D&Os.

7. Payment of Professional Fees. All professionals whose retentions are approved by the Court, including professionals retained by the Debtors and the Creditors' Committee (the "Retained Professionals"), seeking approval by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Dismissal Date shall (i) file, on or before the date that is twenty-one (21) days after the Settlement Approval Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred (the "Final Fee Applications"), and serve such Final Fee Applications on counsel to the Debtors, the U.S. Trustee and counsel to the Ad Hoc Group.

8. Parties in interest shall have twenty-one (21) days from the date of filing of the applicable Final Fee Application to object to the Final Fee Application by filing a written objection with the Court (a "Fee Application Objection"). If any Fee Application Objections are filed, the Debtors shall schedule a hearing with the Court on the applicable Final Fee Application.

9. No later than three (3) days after the applicable Final Fee Application has been approved by the Court, the Debtors shall pay all approved Professional Fees to the applicable Retained Professional from the funds in the Professional Fees Escrow Account.

10. In connection with the Case Settlement, on the Dismissal Date, the Debtors shall pay in cash, all reasonable, documented and invoiced fees and out-of-pocket expenses incurred through and including the Dismissal Date of the Second Lien Advisors related to the Case Settlement; *provided*, that the Second Lien Fees and Expenses paid to Quinn Emanuel Urquhart & Sullivan, LLP shall not exceed $250,000.

11. Dissolution Reserve. Prior to making the Settlement Payment, the Debtors shall fund $75,000 of cash *plus* the appropriate sum of quarterly fees due and payable to the U.S. Trustee under 28 U.S.C. § 1930(a)(6)(A) (collectively, the "Dissolution Amount") to a segregated account (the "Dissolution Reserve") held by the Indemnity Agent or another third party designated by the Debtors, which Dissolution Amount shall be used solely to pay or reimburse all out-of-pocket fees, costs and expenses (including reasonable and documented legal fees) incurred by any of the Dissolution Representative (as defined below), Party City Holdings, Inc. ("PCHI") or the Debtors to effectuate the dissolution of the Debtors. After the dissolution of the Debtors has been effectuated and all such fees, costs and expenses incurred in connection therewith have been reimbursed, the Indemnity Agent will turn over any funds remaining in the Dissolution Reserve to the Second Lien Trustee for distribution to the Second Lien Noteholders in accordance with the Second Lien Notes Indenture.

B. Releases. This Court has jurisdiction under 28 U.S.C. §§ 1334(a) and 1334(b) to approve the release provisions set forth in this Order. Section 105(a) of the Bankruptcy Code permits approval of the releases set forth in the Case Settlement and this Order.

Based upon the record in these chapter 11 cases, such provisions were an integral part of the Case Settlement, and are essential to the formulation and implementation of the Case Settlement. Accordingly, based upon the record of these chapter 11 cases, this Court finds that the releases provisions set forth in this Order are consistent with the Bankruptcy Code and applicable law.

(i)     Mutual Release. Effective on and after the Settlement Approval Date, in exchange for good and valuable consideration provided by each of the Released Parties (as defined below), each Released Party and its respective assets and property are, and are hereby deemed to be, conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each other Releasing Party (as defined below) and any and all other Entities who may purport to assert any Cause of Action (as defined below), directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors that such Entity (as defined below) would have been legally entitled to assert (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Case Settlement, the Sale, the Debtors' indebtedness and securities, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' sale or marketing efforts, intercompany transactions between or among a Debtor, another Debtor and/or an Affiliate (as defined below) of a Debtor (including Party City), these chapter 11 cases, the formulation, preparation, dissemination, negotiation, execution, amendment, termination or filing, as applicable, of the APA and ancillary or related documents, First Lien Notes Indenture, Second Lien Notes Indenture, ABL Facility, DIP Notes Facility, DIP Notes Documents, DIP ABL Facility, DIP ABL Agreement and the documents related thereto or any restructuring or sale transaction, contract, instrument, release, or other agreement or document relating to any of the foregoing, created or entered into before or during these chapter 11 cases, any Avoidance Actions (as defined below), the pursuit, administration and implementation of the Sale or the Case Settlement, including the distribution of property pursuant to the Sale or hereunder or under any other related agreement, the business or contractual arrangements between any Debtor and any Released Party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Dismissal Date related or relating to any of the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any rights or obligations of any party or Entity hereunder, under the APA, the Second Lien Notes Indenture (including any indemnification rights of the Second Lien Trustee), the Omnibus Agreement or any related documents or under any document, instrument, or agreement to implement the Case Settlement or the Sale, or any Claim (as defined below) or obligation arising hereunder or (b) any person from any claim or cause of action related to an act or omission that constitutes intentional fraud, willful misconduct, or gross negligence.

6

(ii)     Nothing contained in this Order shall constitute or be deemed a waiver of any rights, claims, indemnities, or Causes of Action that the Debtors, their estates, their D&Os or any Entity may hold under any policies of insurance or relating to any indemnity benefiting the Debtors, their estates or their D&Os.

(iii)     On the Settlement Approval Date, the Settling Second Lien Noteholders shall agree not to, and shall be forever barred, estopped, and permanently enjoined from, exercising, or directing the Second Lien Trustee to exercise, any rights or remedies against the Debtors or their Related Parties (as defined below) with respect to any released claims, including any claims for payment arising under the Second Lien Notes Indenture or the Second Lien Notes.

12.     Exculpation. The Settlement Parties have agreed to the following exculpation (the "Exculpation"), subject to Court approval, which the Debtors shall be permitted to seek on an expedited basis at any time, including after the Court's decision on the U.S. Trustee's limited objection to confirmation of the plan of reorganization in *Corelle Brands Acquisition Holdings LLC (f/k/a Instant Brands Acquisition Holdings Inc.)*, Case No. 23-90716 (MI) (Bankr. S.D. Tex. Feb. 8, 2024) [Docket No. 1013]:

> Except as otherwise specifically provided herein, to the fullest extent authorized by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, from the Petition Date through the Dismissal Date, these chapter 11 cases, the Case Settlement, the Sale, the Debtors' indebtedness and securities, the Debtors' sale or marketing efforts, intercompany transactions between or among a Debtor and another Debtor, and/or an Affiliate of a Debtor (including Party City), the formulation, preparation, dissemination, negotiation, amendment, or filing or termination, as applicable, of the APA and ancillary or related documents, First Lien Notes Indenture, Second Lien Notes Indenture, ABL Facility, DIP Notes Facility, DIP Notes Documents, DIP ABL Facility, DIP ABL Agreement and the documents related thereto, or any restructuring or sale transaction, contract, instrument, release or other agreement or document relating to the foregoing created or entered into during these chapter 11 cases, the Debtors' sale or marketing efforts, the pursuit, administration and implementation of the Sale or the Case Settlement, including the distribution of property pursuant to the Sale or hereunder or under any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place from the Petition Date through the Dismissal Date related or relating to any of the foregoing, except for claims related to any act or omission that is judicially determined in a final order to have constituted intentional fraud, willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above shall not operate to waive or

release the rights of any Entity to enforce the Case Settlement, the Sale, the APA, the Omnibus Agreement or any document, instrument, or agreement executed to implement the foregoing or any claim or obligation arising under the foregoing.

13.     If the Debtors seek Court approval of the Exculpation, the rights of the U.S. Trustee to object to the Exculpation are expressly reserved but no further notice of the Debtors' request shall be required. The release and exculpation provisions, if approved, shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability, including pursuant to any prior order of the Court or agreement among the Settlement Parties.

14.     As used in the Mutual Release and the Exculpation, the following capitalized terms shall have the meanings set forth below:

i.      "Affiliate" has the meaning as set forth in section 101(2) of the Bankruptcy Code.

ii.     "Avoidance Actions" means any and all avoidance, recovery or subordination claims and causes of action, whether actual or potential, to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 594, 550, 551, and 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

iii.    "Cause of Action" means any action, proceeding, agreement, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, cross-claim, counterclaim, or recoupment, and any claim on a contract or for a breach of duty imposed by law or in equity; (b) with respect to the Debtors, the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any

Avoidance Action.

iv. "Claim" means a "claim" against any Debtor as defined in section 101(5) of the Bankruptcy Code.

v. "Entity" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

vi. "Exculpated Parties" means, collectively, to the maximum extent permitted by law, and in each case in its capacity as such: (a) the Debtors; (b) the Creditors' Committee; and (c) each Independent Appointee.

vii. "Independent Appointees" means (i) William L. Transier, as independent director or independent manager, as applicable, for each of the Debtors, (ii) Steven Collins, as independent director of Amalgam Liquidation International, Inc., and (iii) Adrian Frankum, as chief restructuring officer of each of the Debtors.

viii. "Interest" means any ownership interest in any Person (as defined below) or Entity, including any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor, any interest evidenced by common or preferred stock, a limited liability company or other membership or partnership interest or unit, a warrant, an option, any other right to acquire or otherwise receive any ownership interest in such Person or any right to payment or compensation based upon any such interest.

ix. "Person" means a "person" as defined in section 101(41) of the Bankruptcy Code.

x. "Related Parties" means, collectively, with respect to any Entity or Person, including each Released Party and Exculpated Party, such Entity or Person's, current, former and future affiliates, member firms and associated entities, and with respect to each of the foregoing, their affiliates, current and former directors, current and former managers, current and former officers, equity holders, affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

xi. "Released Party" means, each of, and in each case in its capacity as such: (a) the Debtors and their estates; (b) the Second Lien Noteholders; (c) the Second Lien Trustee; (d) Party City; (e) each current and former Affiliate of each Entity in clause (a) through (d); and (f) each Related Party of each Entity in clause (a) through (e).

xii. "Releasing Party" means each Released Party, other than Second Lien Noteholders which are not Settling Second Lien Noteholders.

## Case Resolution Procedures and Dismissal

15.     Upon payment of all approved Professional Fees and the Settlement Payment (the "Dismissal Date"):

(i)     the chapter 11 cases of each of the Debtors shall be dismissed and a representative agreed upon between the Debtors and PCHI (such representative, the "Dissolution Representative"), without the need for further action on the part of this Court, shall be authorized, on behalf of the Debtors and/or PCHI, as applicable, to (a) file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable) and (b) take such other actions as the Debtors may determine to be necessary or desirable to effectuate the dissolution of the Debtors in consultation with PCHI. Any certificate of dissolution or equivalent document may be executed by the Debtors, PCHI or the Dissolution Representative without need for any action or approval by the shareholders or board of directors or managers of any Debtor. PCHI, as the ultimate beneficial holder of the equity interests in Amalgam, shall use commercially reasonable efforts to cooperate with the Dissolution Representative and the Debtors with respect to effectuating the Debtors' timely dissolution;

(ii)     the chapter 11 cases of each of the Debtors shall be deemed "fully administered" within the meaning of section 350 of the Bankruptcy Code and the dockets of the Debtors shall be marked as "Closed" by the Clerk of the Court;

(iii)     the Debtors' previous and existing D&Os and estate professionals shall have no continuing obligations or duties to the Debtors on or after the Dismissal Date and each D&O and estate professional that has not already resigned shall be deemed to have resigned or shall otherwise cease to be a director, officer or manager or professional of the applicable Debtor as of the Dismissal Date;

(iv)     any executory contract or unexpired lease that has not been assumed by the Debtors, including in connection with the Sale, shall be deemed rejected, *provided,* that nothing in this subclause (iv) shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and their estates or the Debtors' D&Os; *provided, further*, that nothing in subclause (iv) shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease; and

(v)     the Second Lien Notes and the Second Lien Notes Indenture shall continue in effect to (a) allow the Second Lien Noteholders to receive distributions in accordance with the Case Settlement, (b) allow the Second Lien Trustee to make distributions in accordance with the Case Settlement, and (c) preserve any rights of the Second Lien Trustee to payment of fees, expenses, and indemnification obligations as against any distributions to the Second Lien

10

Noteholders, including any rights to priority of payment and/or to exercise charging liens pursuant to the Second Lien Notes Indenture.

16.     Within two business days after the Dismissal Date, the Debtors shall file a notice of dismissal of chapter 11 cases (the "Dismissal Notice") and serve such Dismissal Notice on the U.S. Trustee, counsel to the Settling Second Lien Noteholders, counsel to the Second Lien Trustee, all parties who have requested notice pursuant to Bankruptcy Rule 2002, and any other party deemed appropriate by the Debtors.

## Distributions

17.     Reservation of Rights for Distributions. For the avoidance of doubt, and notwithstanding anything to the contrary in this Order (i) all of the Debtors' defenses, claims and other rights and actions with regard to the distribution of assets of the Debtors' estates, whether in law or equity, are expressly preserved, and (ii) following the Dismissal Date, the fees and expenses of the Second Lien Trustee (including annual trustee fees and counsel fees and expenses) related to effectuating distributions and otherwise implementing the terms of the Case Settlement, and any other unpaid Second Lien Trustee fees and expenses, shall be payable from the Settlement Payment and other money or property held or collected by the Second Lien Trustee, in accordance with the Second Lien Notes Indenture.

18.     No Liability.  The Second Lien Trustee and any of its agents shall not incur any liability whatsoever on account of any distributions made pursuant to the Case Settlement except for gross negligence or willful misconduct.

19.     Professional Fees Escrow Account. The Professional Fees Escrow Account shall be maintained and administered by the Debtors until all allowed fees of each Retained Professional are paid in accordance with the procedure set forth herein. After such time,

11

any remaining cash and any funds remaining in the Professional Fees Escrow Account shall be remitted to Second Lien Notes Trustee as set forth herein.

20.     Automatic Stay. Unless otherwise provided herein or in a final order of the Bankruptcy Court, all injunctions or stays arising under or entered during these chapter 11 cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Settlement Approval Date, shall remain in full force and effect through the Dismissal Date.

**Miscellaneous**

21.     Monthly Operating Reports. The Debtors, no later than fourteen (14) days after the Dismissal Date, shall file all outstanding monthly operating reports for all periods through the Dismissal Date and shall serve a true and correct copy of said reports on the U.S. Trustee.

22.     U.S. Trustee Fees. The Debtors, no later than fourteen (14) days after the Dismissal Date, shall pay the appropriate sum of quarterly fees due and payable under 28 U.S.C. § 1930(a)(6)(A) and (B) by remitting payment to the U.S. Trustee Payment Center, PO Box 6200-19,        Portland,        OR        97228-6200        or        online        at: https://www.pay.gov/public/form/start/672415208, and the Debtors shall furnish evidence of such payment to the U.S. Trustee, 515 Rusk, Suite 3516, Houston, Texas. This Court shall retain jurisdiction to enforce payment of fees assessed under 28 U.S.C. § 1930(a)(6)(A) and (B).

23.     Survival of Prior Orders. Notwithstanding anything to the contrary in this Order, this Order, the Final DIP Order and the Sale Order, including the rights granted to the Purchaser thereunder, shall remain effective and binding on all parties in interest following the Dismissal Date.

24.     Waiver of Rule 6004(h). To the extent applicable, Rule 6004(h) of the Bankruptcy Rules is waived, and this Order shall be effective and enforceable immediately upon entry.

25.     "All Necessary Actions" Clause. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Order.

26.     Retention of Jurisdiction. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order and any other order of this Court entered in these chapter 11 cases, including, among other things, any pleading filed by or against the Debtors.

Signed: March 21, 2024

_____
Marvin Isgur
United States Bankruptcy Judge

Schedule 1

Settling Second Lien Noteholders

Cetus Capital, LLC
Lynstone SSF Holdings S.à r.l.
Neuberger Berman Investment Advisors LLC
Silver Point Specialty Credit Fund II Mini-Master Fund (Offshore), L.P.
Silver Point Capital Fund, L.P.
Silver Point Capital Offshore Master Fund, L.P.
Silver Point Distressed Opportunities Institutional Partners Master Fund (Offshore), L.P.
Silver Point Distressed Opportunities Institutional Partners, L.P.